**Chadwick Prodromos, M.D.**
**Michael Coleman v. Ghaliah Obaisi**

```
          IN THE UNITED STATES DISTRICT COURT
             NORTHERN DISTRICT OF ILLINOIS
                    EASTERN DIVISION

   MICHAEL COLEMAN,              )
                                 )
              Plaintiff,         )
                                 )
        vs.                      ) No. 1:16-CV-4917
                                 )
   GHALIAH OBAISI, Executor of   )
   the Estate of SALEH OBAISI,   )
   M.D.,                         )
                                 )
              Defendant.         )
```

The deposition of CHADWICK C. PRODROMOS, M.D., taken in the above-entitled cause, before Angela M. Ingham, a Notary Public within and for the County of Cook and State of Illinois, and a Certified Shorthand Reporter of said state, at 1714 Milwaukee Avenue, Glenview, Illinois, on December 20, 2018, at the hour of 1:32 p.m.

EXHIBIT 2

Page 2

```
 1          APPEARANCES:
 2              MR. DANIEL R. FORMELLER
                MS. KATHERINE LETCHER
 3              TRESSLER, LLP
                233 South Wacker Drive
 4              22nd Floor
                Chicago, Illinois 60606
 5              312.627.4000
                dformeller@tresslerllp.com
 6
                    On behalf of the Plaintiff;
 7
                MR. JAMES. F. MARUNA
 8              CASSIDAY SCHADE LLP
                222 West Adams Street
 9              Suite 2900
                Chicago, Illinois 60606
10              312.739.3213
                jmaruna@cassiday.com
11
                    On behalf of the Defendant.
12
13
14
15
16
17
18
19
20
21
22
23
24
```

Page 3

```
 1                  I N D E X
 2   EXAMINATION                              PAGE
 3   BY MR. FORMELLER                           4
     BY MR. MARUNA                             38
 4
 5              E X H I B I T S
 6   NO.      DESCRIPTION                     PAGE
 7   Deposition Exhibit Number
 8    1       ........................          4
      2       ........................          5
 9    3       ........................          6
      4       ........................          6
10
```

Page 4

```
 1              (Witness duly sworn.)
 2          CHADWICK C. PRODROMOS, M.D.,
 3   called as a witness herein, having been first duly
 4   sworn, was examined and testified as follows:
 5               EXAMINATION
 6   BY MR. FORMELLER:
 7       Q.  Sir, would you state your full name,
 8   please.
 9       A.  Chadwick C. Prodromos, M.D.
10       Q.  And, Dr. Prodromos, this deposition today
11   is being taken pursuant to notice in a case
12   involving the plaintiff, our client, a Mr. Michael
13   Coleman.
14          It's my understanding that you have
15   prepared a report of consultation; and with that
16   report, you have included your curriculum vitae, is
17   that correct?
18       A.  The former, yes; the latter also, yes.
19       Q.  I'm going to have marked as Exhibit 1 --
20   it's actually already marked as Exhibit 1.  Doctor,
21   I'm going to hand you the curriculum vitae.  Can
22   you tell me by looking at this curriculum vitae if
23   this is the most up-to-date, complete, and accurate
24   curriculum vitae that you have?
```

Page 5

```
 1       A.  Well, it's close.  I did a presentation at
 2   an international meeting a couple months ago that's
 3   not on here.  That's about it, except for that.
 4       Q.  But certainly the information on the first
 5   page of the curriculum vitae --
 6       A.  Yes.
 7       Q.  -- is accurate, is that correct?
 8       A.  Yes.
 9       Q.  And you may have this already in front of
10   you, Doctor, but I'm going to mark as Exhibit 2 a
11   copy of your report of consultation.
12       A.  Okay.
13              (Whereupon, Prodromos Deposition
14               Exhibit No. 2 was marked for
15               identification.)
16   BY MR. FORMELLER:
17       Q.  Doctor, this report of consultation that
18   you have prepared is dated the 19th of October,
19   2018, and it so indicates that on the last page,
20   Page 13 of the report.
21          Have you done any further work in
22   consultation concerning Mr. Coleman's medical
23   treatment or his current condition following that
24   date in October?
```

Page 6

```
 1      A.  I reviewed my report yesterday.  That's
 2  about it.
 3      Q.  But you have not looked at any additional
 4  records?
 5      A.  No.
 6      Q.  All right.  On the page that's numbered 2
 7  but actually the first page of text of your report,
 8  Doctor, the report begins with materials reviewed,
 9  and there are five items listed there.  Are those
10  the only items that you have reviewed in preparing
11  this report of consultation?
12      A.  Yes.
13      Q.  I want to clarify if I can, Doctor, there
14  have actually been two depositions of Michael
15  Coleman taken, so let's mark this.
16              (Whereupon, Prodromos Deposition
17               Exhibit Nos. 3 and 4 were marked
18               for identification.)
19  BY MR. FORMELLER:
20      Q.  I don't intend this to be a memory test,
21  but would you look at these two exhibits and see if
22  that might refresh your recollection as to which
23  deposition you looked at?
24      MR. MARUNA:  Can I see a copy?
```

Page 7

```
 1      MR. FORMELLER:  Sorry.
 2      MR. MARUNA:  No worries.
 3      THE WITNESS:  You asked me to look at one
 4  versus the other?
 5  BY MR. FORMELLER:
 6      Q.  Yes.
 7      A.  I would not know from that.
 8      Q.  How often, Doctor, have you served as a
 9  testifying expert in cases?
10      A.  By "testifying," you mean giving a
11  deposition or testifying in court?
12      Q.  Both.
13      A.  So in court as an expert, I think -- I'm
14  not sure, maybe once, maybe zero.  I've been to
15  court a couple of times.  One was as a treater, and
16  I don't remember the second.  It was a long time
17  ago.
18      Q.  And how many times have you offered your
19  deposition in litigation?
20      MR. MARUNA:  As an expert or as a treater?
21      MR. FORMELLER:  Thank you.
22  BY MR. FORMELLER:
23      Q.  As an expert.
24      A.  In total, less than ten.  I couldn't tell
```

Page 8

```
 1  you if it was four, seven, or eight but something
 2  like that.
 3      Q.  Prior to your engagement in this case,
 4  when is the last time that you were engaged as an
 5  expert witness on behalf of any party?
 6      A.  Where I gave a deposition?
 7      Q.  Yes.
 8      A.  So I'm not sure I can tell you exactly but
 9  2018 once, maybe twice.
10      Q.  And when you have been engaged as an
11  expert and given a deposition in those ten or so
12  times, have you ever served as an expert witness
13  for the plaintiff in any of those cases?
14      A.  As an expert?
15      Q.  Yes.
16      A.  So the few that come to mind now have been
17  defense, but I couldn't tell you for sure.
18      Q.  And of the times that you have been
19  engaged as an expert where you have given your
20  deposition, have any of those engagements been on
21  behalf of Wexford Medical?
22      A.  So Wexford Medical is the company -- just
23  to be clear, is my deposition today on behalf of
24  Wexford Medical?
```

Page 9

```
 1      Q.  Yes.
 2      A.  So I think maybe once.
 3      Q.  So you're aware that -- or maybe you
 4  aren't but that Dr. Obaisi, who is now deceased,
 5  was the medical director at the Stateville
 6  Correctional Institution, correct?
 7      A.  Yes.
 8      Q.  And that he was employed there through a
 9  contract but employed by Wexford Medical.  You're
10  aware of that?
11      A.  Yes.
12      Q.  I'm going to state as a fact that we can
13  just use for the purposes of this deposition that
14  Dr. Obaisi began his tenure at Stateville
15  Correctional system in the latter half of 2012, and
16  he retained that position until he died, passed
17  away, not all that many months ago.
18      MR. MARUNA:  December 2017.
19  BY MR. FORMELLER:
20      Q.  Right.  So in reviewing the medical
21  records that you have listed here in your report,
22  you have listed three sets essentially of medical
23  records, the Illinois Department of Corrections
24  medical records and followed by these Bates stamps,
```

Page 10

1  the University of Illinois at Chicago Medical
2  Center records, and the Presence St. Joseph medical
3  records. Do you see that?
4      A. I do.
5      Q. Okay. Are you aware that Mr. Coleman has
6  continued to receive medical treatment during the
7  time, I believe, you were preparing this report and
8  afterwards at the University of Illinois Medical
9  Center?
10     A. So I don't -- the only way I would be
11 aware of that, I suppose, is if counsel for Wexford
12 told me that, right, and I don't -- honestly I'm
13 not sure.
14     Q. The point of my question is to determine
15 whether or not you've seen those records.
16     A. Well, the only records I've seen are the
17 ones that are listed here.
18     Q. In preparing for your deposition here
19 today, you mentioned earlier that you had reviewed
20 your report of consultation. Did you review
21 anything else specifically in preparation for this
22 deposition today?
23     A. No.
24     Q. At the end of your report of consultation,

Page 11

1  Doctor, on the last two pages you state a summary
2  of your opinions.
3      A. Right.
4      MR. MARUNA: So you're looking at Pages 12 and
5  13?
6      MR. FORMELLER: I am.
7      THE WITNESS: Give me two minutes.
8      MR. MARUNA: For the record, the doctor was
9  just advised that he needed to go tend to a
10 patient, taking a short break.
11         (Short recess was taken.)
12 BY MR. FORMELLER:
13     Q. On Pages 12 and 13 of your report, Doctor,
14 you have a summary of opinions, and they appear in
15 seven numbered paragraphs. Do you have any
16 opinions other than those that are stated on those
17 two pages?
18     A. No.
19     Q. Have you been asked to prepare any
20 opinions other than those on those two pages?
21     A. No.
22     Q. During your review of the medical records,
23 you have noted that Mr. Coleman has been seen by a
24 number of healthcare practitioners and doctors, and

Page 12

1  I'm just going to go through some names to
2  determine whether or not you've spoken to any of
3  these people.
4      Have you ever spoken to Dr. Obaisi?
5      A. No. I've spoken to nobody. I've spoken
6  to none of those people, I can tell you
7  definitively.
8      Q. Have you spoken to any of the physical
9  therapists he --
10     A. No. I've spoken to one, maybe more
11 attorneys for the firm that retained me, and that's
12 it.
13     Q. In addition to the report of consultation
14 that you have prepared and that we've marked as an
15 exhibit, have you prepared any other materials in
16 relation to your engagement in this case?
17     A. No.
18     Q. If we could look at your opinions, Doctor,
19 one of the words that you use in the first four
20 opinions is timing.
21     A. Is what?
22     Q. Timing, do you see that?
23     A. Yes.
24     Q. Timing and nature?

Page 13

1      A. Yes, yes.
2      Q. To what extent is the timing of treatment
3  an important consideration for alleviating a
4  patient's symptoms?
5      MR. MARUNA: Objection, form of the question,
6  vague. Do you want to keep that general, or can
7  you narrow it down?
8  BY MR. FORMELLER:
9      Q. Well, let's just read No. 1. Your first
10 opinion is that I am of the opinion that the timing
11 and nature of the treatment provided by Dr. Obaisi
12 to plaintiff's degenerative right knee condition
13 was reasonable, compassionate, and well within the
14 community standard of care. Have I read that
15 correctly?
16     A. Yes.
17     Q. Why did you include timing in your
18 opinion?
19     A. Because it was my understanding from
20 talking to the counsel that retained me that part
21 of the issue in this case was the treatment had
22 been delayed causing the patient to endure, you
23 know, unnecessary, prolonged suffering so -- which
24 seemed to me to not be the case so I was trying to

Page 14

1  point out that not only did I think that he got
2  what he needed but that he got what he needed
3  without undue delay.
4      Q.  Is undue delay a definable term in your
5  practice?
6      A.  Well, within the standard of care, I
7  think.  I mean, it's not numerically definable.
8      Q.  When you were reviewing the medical
9  records that are listed in your report of
10  consultation, were you being aware and conscious of
11  the sequence of events in terms of timing?
12      A.  Yes.
13      Q.  Are you aware that there were instances in
14  the records where medical treatment or physical
15  therapy was delayed because of decisions made at
16  the correctional institution?
17      MR. MARUNA:  Objection, foundation.  Doctor,
18  over the objection.
19      THE WITNESS:  So I was aware of the chronology.
20  I can't tell you with certainty that I was always
21  aware of the reasons for the chronology.
22  BY MR. FORMELLER:
23      Q.  And in the first four paragraphs of your
24  opinions, Doctor, each of them addresses a

Page 15

1  different physical issue.  The first one is the
2  right knee.  The second one is the right hip.  The
3  third one is the lower back, and then the fourth
4  one sort of combines all those; but you use the
5  word timing and nature in each of those opinions,
6  is that correct?
7      A.  Yes.
8      Q.  And when you're using the word in those
9  opinions compassionate, what is it that you're
10  trying to communicate?
11      A.  It seemed to me that the tenor of the
12  complaint was that the providers or the system or
13  both were callous somewhat, and I wish to convey
14  that they seemed to me to be appropriately
15  attentive, and it's an obligation of providers to
16  be compassionate when they're taking care of
17  patients, and it appeared to me that they cared
18  about his complaints and were not callous and were
19  not ignoring them, and I thought compassionate
20  summed that up.
21      Q.  Have you ever yourself provided medical
22  care to an incarcerated individual at the
23  Department of Corrections?
24      A.  At the prison?

Page 16

1      Q.  Yes.
2      A.  Or outside the prison?
3      Q.  Either one.  Let's do at the prison first,
4  Doctor, thank you.
5      A.  Never at a prison.
6      Q.  And have you seen incarcerated individuals
7  outside of the walls of the prison to provide
8  medical care?
9      A.  I did surgery on one such twenty some
10  years ago.  I just kind of remember.  There may
11  have been another, certainly not many.
12      Q.  When you were preparing your report, did
13  you prepare a separate chronology of treatment for
14  Mr. Coleman?
15      A.  No --
16      MR. MARUNA:  I'm going to object to the form of
17  the question, vague.  Are you talking a formal
18  report, or are you talking like a doctor's
19  handwritten notes?
20  BY MR. FORMELLER:
21      Q.  Let's do handwritten notes.  Did you
22  prepare a chronology of treatment of Mr. Coleman
23  while you were reviewing his medical records?
24      A.  I didn't -- I took notes.  I didn't

Page 17

1  prepare something whose purpose and orientation was
2  specifically chronologic.
3      Q.  There's also this issue in the medical
4  records and you offer an opinion on it in your
5  opinion No. 7 and that's this issue of the use of
6  crutches.
7      At one time Mr. Coleman was prescribed the
8  use of crutches following knee surgery and
9  treatment for that knee.  Do you recall that in the
10  medical records?
11      A.  Yes.
12      Q.  And then at some point later in time, that
13  crutch or those crutches were, to use a layman's
14  term, taken away.  Do you recall that?
15      A.  Yes.
16      Q.  So your opinion which is numbered 7 here
17  is that the absence of the crutches was not the
18  cause of Mr. Coleman's fall in 2014, is that
19  correct?
20      A.  Right.
21      Q.  You used the word "purported."  Is that
22  because you're not sure that that fall actually
23  took place?
24      A.  I'm sure that something happened.  As to

Page 18

1  how much of a fall it was, it wasn't clear to me
2  that it was clear from the record.
3      Q.  Throughout your review of the medical
4  records and the symptomology or complaints or
5  history that is given by Mr. Coleman, did you have
6  any sense at all or do you have an opinion that any
7  of those symptoms or complaints are fabricated?
8      A.  I would not be in a position to opine that
9  anything was fabricated on Mr. Coleman's part.
10     Q.  Did your review of the medical records
11 that you have listed here include your review of
12 the actual X-ray and MRI images?
13     A.  No.
14     Q.  So you were relying upon the reports of
15 the doctors or healthcare practitioners that took
16 those images and then reported upon them, is that
17 correct?
18     A.  That's correct.
19     Q.  And you have never spoken with Mr. Coleman
20 either, is that correct?
21     A.  Yes, that's correct.
22     Q.  Now, Doctor, taking away from this case
23 just for a moment, in your practice as an
24 orthopedic surgeon when you're seeing a patient for

Page 19

1  the very first time, what is the typical procedure
2  or protocol you would use in your first contact
3  with that patient?
4      A.  Take a history, perform a physical exam,
5  in some cases take and view X-rays.
6      Q.  And what in your opinion as an orthopedic
7  surgeon is the value of the history given by the
8  patient?
9      A.  Substantial.
10     Q.  And let's talk about a knee examination of
11 either extremity.  If a patient -- this is
12 hypothetical, Doctor.  If a patient presented
13 themselves with complaints of pain in their knee,
14 what would be your typical physical examination
15 that you would administer?
16     A.  There are many things that I could do, and
17 it would depend upon the patient.  So the exam to
18 some extent -- the exam to some extent is tailored
19 to the history, to the age, to the gender, to the
20 habitus, and such.
21     Q.  Is there a particular examination or
22 physical protocol that you would do seeing a
23 patient post-arthroscopic surgery for meniscus
24 repair?

Page 20

1      A.  Forgive me, but just to be clear he had a
2  meniscectomy.
3      Q.  Yes, he did.
4      A.  As opposed to meniscal repair.  They're
5  often used interchangeably, but they're different,
6  so I just wanted to be clear.
7          So, again, the exam is tailored to the
8  patient.  So a patient that came in and looked
9  great and had no complaints and such, it would be
10 different than someone who came in and had a fever
11 of 103, you know, and such.
12     Q.  What about a patient that was complaining
13 of persistent pain in their knee postsurgery?
14     A.  So I can tell you -- so you want to get
15 some flavor of what would be done in the exam for
16 such a patient?  Is that your question?
17     Q.  Yes.
18     A.  So there's observation, looking at the
19 affected knee; and if the patient complained of
20 pain, there would be palpation.  There would be
21 some measure of range of motion.  There would be
22 some observation at least in my hands of ambulatory
23 capacity.
24     Q.  In your review of Mr. Coleman's medical

Page 21

1  records, is it your opinion that all of the
2  treatment that was prescribed to him was
3  appropriate and met the standard of care in the
4  community?
5      A.  Yes.
6      Q.  In your review of those medical records,
7  is there anything that you would have prescribed
8  differently for medical treatment for Mr. Coleman
9  that the attending physicians who were taking care
10 of him did not do?
11     A.  I don't know that I can answer that
12 exactly.  I thought that their care was reasonable.
13 Different providers provide differences in care,
14 you know, in minor ways and less minor ways based
15 on custom and practice and such.
16     Q.  Again, in your review of the medical
17 records, periodically Mr. Coleman was prescribed
18 physical therapy.  Do you recall that in the
19 medical records?
20     A.  Yes.
21     Q.  What generally is the purpose of physical
22 therapy for a patient presenting the types of
23 symptoms that Mr. Coleman was presenting?
24     A.  Actually there's some variability.

Page 22

1   Physical therapy can provide strengthening and
2   stretching for range of motion.  There can be
3   modalities such as ultrasound and muscle
4   stimulation for mitigation of symptoms.
5       There can be gait training.  There can be
6   instruction in activities of daily living.
7   Sometimes there can be other techniques that a
8   therapist will use, and they have deep tissue
9   massage, that kind of thing.
10      Q.  So, Doctor, in November of 2014 -- and
11  this is in relation to your opinion numbered 7.  In
12  November of 2014, Mr. Coleman was brought to the
13  medical facility at the correctional institution
14  stating that he was coming down the stairs when he
15  fell and that he was in acute distress at that
16  time.  Do you recall that?
17      MR. MARUNA:  Objection, foundation, isn't what
18  the record says.  Over the objection.
19      THE WITNESS:  I don't know that I caught every
20  word of what you just said, but I know that there
21  was some kind of a fall.
22      MR. MARUNA:  Do you want to show the record?
23      MR. FORMELLER:  I'm sorry?
24      MR. MARUNA:  I've got the record if you want to

Page 23

1   show it to the doctor if you're going to ask about
2   it.
3       MR. FORMELLER:  I'm reading a summary of it.
4       MR. MARUNA:  Sure.
5       MR. FORMELLER:  But I'm perfectly willing for
6   him to look at it if he needs it.
7   BY MR. FORMELLER:
8       Q.  Do you know the circumstances under which
9   that fall took place?
10      A.  Well, he was on stairs and his knee gave
11  way and he fell is my understanding.
12      Q.  Do you know if he had a crutch or crutches
13  or not at that time?
14      A.  I mean, I would have to look to recall,
15  which I can do.  I think I have it in here
16  someplace.  Is this November?
17      Q.  November 10th of 2014.
18      A.  Or maybe you can tell me.
19      MR. MARUNA:  Doctor, to speed this along, I
20  think it's on Page 6 where you talk about the
21  November appointment.
22      THE WITNESS:  Right.  So he was using crutches
23  when he fell, I think.
24

Page 24

1   BY MR. FORMELLER:
2       Q.  And then you go on to say on Page 6, which
3   counsel referred to, thus it is generally much
4   safer to go up and down stairs without crutches and
5   holding onto the rail for support, do you see that?
6       A.  Yes.
7       Q.  And that's your opinion, is that correct?
8       A.  Yes.
9       Q.  I would like to go back and ask you a few
10  more questions about physical therapy and the use
11  of physical therapy for rehabilitative purposes
12  here.
13      Can there be a detrimental effect,
14  hypothetical again -- let me strike that and start
15  over again.
16      Hypothetically, Doctor, if a patient
17  presents themselves in need of physical therapy and
18  in your opinion it's warranted but there's a delay
19  in the administration of that physical therapy, can
20  that delay have a detrimental effect on the
21  patient's recovery and the prolonging of that
22  patient's pain?
23      MR. MARUNA:  Objection, form of the question,
24  incomplete hypothetical.  Over the objections,

Page 25

1   Doctor, you can answer.
2       THE WITNESS:  Yes, with all due respect,
3   counselor, that's -- it's such a broadly worded
4   hypothetical that I suppose one could certainly
5   hypothesize some kind of a situation where that
6   would be true, but that's a tough question to
7   answer.
8   BY MR. FORMELLER:
9       Q.  So as an example, he was seen
10  orthopedically in August of 2015 and physical
11  therapy was prescribed; but for a number of
12  reasons, no physical therapy took place during the
13  month of August or during the month of September.
14  Would a delay of that month and a half or so have a
15  detrimental effect on a patient with Mr. Coleman's
16  symptoms?
17      A.  You know, his symptoms depend on his
18  pathology and his prior treatment, so depends on
19  what you mean by "detrimental."  Basically not
20  really.  If you wanted to hypothesize a worst case
21  for requested physical therapy being delayed, it
22  could be, but would not necessarily be, that his
23  recovery of strength might be a little prolonged;
24  but I can tell you that physical therapy is a

Page 26

 1  two-edged sword, and people can be made more sore
 2  and worse by physical therapy as well.  So do I
 3  think it was any significant obstacle to his
 4  recovery that it was apparently delayed, no.
 5     Q.  And similarly, would it have had any
 6  impact on either the nature, extent, or duration of
 7  the pain he was complaining of?
 8     A.  So, again, in general, no.  You know,
 9  people are so different that -- so the physical
10  therapy actually tends to increase pain.  Physical
11  therapy is often kind of painful and in many such
12  cases, I think, is not useful to do at all because
13  it's such a two-edged sword.
14         Now there are cases, where as I mentioned
15  earlier, that a therapist will use -- for patients
16  in a lot of pain will used EGS muscle stimulation
17  or ultrasound to kind of try to mitigate pain; but
18  the purpose of the therapy, the primary purpose of
19  the therapy in a case like this, is not to mitigate
20  pain.
21     Q.  So leaving the hypothetical and going back
22  to Mr. Coleman, it is true, is it not, Doctor, that
23  physical therapy was prescribed by orthopedists,
24  orthopedic surgeons for Mr. Coleman?

Page 27

 1     A.  I don't recall exactly but probably if you
 2  say so.
 3     Q.  And do you know what the nature and extent
 4  of that physical therapy is because obviously there
 5  are many different types?
 6     A.  You know, I don't.  Sometimes people just
 7  say evaluate and treat.  Sometimes they're more
 8  specific.
 9     Q.  And do you know what the purpose of that
10  physical therapy was for Mr. Coleman?
11     A.  So, again, there's great variability among
12  even orthopedic surgeons as to what they prescribe,
13  when they prescribe it, whether they prescribe it
14  at all.  So -- and often is modified by the
15  therapist.
16         You know, for example, if you're sent to
17  somebody -- the therapist will generally work on
18  increasing range of motion and increasing strength;
19  and if a patient is having pain, sometimes the
20  therapist on their own will provide muscle
21  stimulation or ultrasound or massage, something
22  like that, but it's fluid.  It's fluid and it's
23  variable.
24     Q.  So as an example -- and now I don't have

Page 28

 1  anything better than what you had to look at,
 2  Doctor.  I'm looking at the notes of a Dr. Matthew
 3  Marcus on May 4, 2016, where Dr. Marcus says the
 4  MRI shows a small gluteus medius tear of the right
 5  hip.  In the right knee there's some cartilage wear
 6  but no meniscal injury.
 7         The note goes on to say we gave him
 8  injections of the right knee and the right greater
 9  trochanter.  We also told him to get X-rays of the
10  hip, pelvis, and knee on his way out.  Patient was
11  given prescription for physical therapy and told to
12  follow up in one year.
13         I'm reading directly from the doctor's
14  notes, so I don't have anything more than that to
15  ask you about; but do you have any knowledge or
16  understanding on what that physical therapy was
17  that was prescribed?
18     A.  In general.  Do I have any direct
19  knowledge?  No.  I would have to see the
20  prescription.  And, as I said, often a provider
21  will put evaluate and treat, and some providers are
22  very specific.  Without seeing what was prescribed,
23  I wouldn't be able to opine.
24     Q.  Are you aware, Doctor, that in 2017 the

Page 29

 1  same doctor, Dr. Matthew Marcus, referred
 2  Mr. Coleman for nonoperative pain management?
 3     A.  You know, I'll take your word for it.  I
 4  don't remember every passage from the medical
 5  record.
 6         MR. MARUNA:  It's on Page 9 of the report, I
 7  think.
 8         THE WITNESS:  Is there still a question pending
 9  about pain management, or was that a question?
10  BY MR. FORMELLER:
11     Q.  My question is, were you aware that
12  Dr. Marcus had referred Mr. Coleman for pain
13  management in 2017?
14     A.  Counselor said that it's on Page 9, is
15  that right?  I don't see it.  Where is it on
16  Page 9, please?
17     Q.  It's at the bottom of Page 9 and carried
18  over to the very top of Page 10, Doctor.  Because
19  I'm not trying very hard to confuse you at all, the
20  sentence that you have at the top of Page 10 on the
21  course of nonoperative treatment, that's what that
22  was.  It was a referral for pain management.
23     A.  Under discussion?
24         MR. MARUNA:  Right at the top.



Page 30

```
 1   BY MR. FORMELLER:
 2     Q.  Right at the very top where it says I
 3   concur with Dr. Marcus' recommended course of
 4   nonoperative treatment.  The nonoperative treatment
 5   was a referral for pain management.
 6     A.  I see.
 7     Q.  Which is the note that I read you before.
 8     A.  Got it.  So your question to me is, was I
 9   aware that Dr. Marcus referred him for pain
10   management?
11     Q.  Correct.
12     A.  You know, again, I know that a lot of
13   people tried a lot of things to help him.  I can't
14   say that I remember that specific referral without
15   looking at the record.
16     Q.  Doctor, in your own practice, either a
17   pre- or postsurgical, have you in your own
18   experience referred patients for pain management?
19     A.  For a knee arthroscopy?
20     Q.  Yes.
21     A.  No.  And if we're talking -- so to be
22   clear, and let me specify, referring for pain
23   management circa current medicine typically means
24   referral to a pain clinic.
```

Page 31

```
 1         Now you can be referred to physical
 2   therapy for pain management, although that's not
 3   the primary thing that they do; but, as I
 4   mentioned, sometimes there are things they can do
 5   that are symptom mitigating.
 6         But if you're referring somebody for --
 7   generally if you're referring somebody for pain
 8   management, they're being referred for medications
 9   or injections either by a pain specialist, which
10   these days is often an anesthesiologist or a
11   physical medicine and rehabilitation doctor; or
12   possibly, I suppose, another doctor could try to do
13   that.
14         So I don't think it's unreasonable to try
15   to do it; and, as I said, it seems to me they were
16   trying any way they could to help him or provide
17   something that would help.
18         But in my practice, I don't -- there
19   are -- again, it's just so broad based.  It depends
20   what you mean by pain management.  Often pain
21   management, again, is injections, epidurals,
22   narcotics, drugs like that.  So that's something
23   that I do virtually never, if not absolutely never.
24   I don't know for sure that that's what they meant,
```

Page 32

```
 1   though.
 2     Q.  All right.  And, again, I don't have much
 3   to offer you to fill that out other than he was
 4   referred to a Dr. Khalid Malik at the pain clinic
 5   at the University of Illinois for treatment.
 6     A.  Okay.  So that's that kind of thing.
 7     Q.  Including and up to October of 2018.  But
 8   I think you've already testified you've not seen
 9   those records.
10     A.  Correct.
11     Q.  Okay.  I'm skipping around here because
12   I'm trying to be expeditious, Doctor; but on Page 9
13   of your report that you were just looking at but in
14   the middle of the page, I'm referring to the
15   September 28, 2016, paragraph.  The last sentence
16   of that paragraph says complying with the
17   recommended course of physical therapy would have
18   offered the potential for improvement of his
19   condition.
20         Do you recall on what you're basing that
21   conclusion or opinion?
22     A.  Well, that's kind of a general statement
23   that physical therapy is potentially efficacious so
24   it would -- if you have a -- you know, a patient
```

Page 33

```
 1   like him would have the potential to get better,
 2   not to say they would, but physical therapy would
 3   certainly offer the potential for improvement.
 4     Q.  You'll need to help me here.  You use the
 5   acronym NSAID in several places in your report.
 6   What is that?
 7     A.  So I should have written that out.  That
 8   stands for nonsteroidal anti-inflammatory drug.
 9     Q.  You also state in your report -- I'm now
10   on Page 12 of your report, Doctor, and I'm back to
11   the issue of crutches that in addition, I'm
12   reading, using crutches when they are not needed
13   also contributes to muscle atrophy which can worsen
14   the knee and can also contribute to falling as
15   previously mentioned.
16         Do you recall seeing anywhere in the
17   medical records any evidence of muscle atrophy for
18   Mr. Coleman?
19     A.  Again, I would have to look at the record.
20   There's -- you know, there's always -- almost
21   always some but the presence or absence of atrophy
22   in his case wouldn't really have bearing on that
23   sentence that you just read.
24     Q.  I'm going to change the language of one of
```



**Chadwick Prodromos, M.D.**
**Michael Coleman v. Ghaliah Obaisi**

Page 34

1  your opinions. Is it your opinion, Doctor, that
2  any delays in treatment that Mr. Coleman would have
3  experienced would not have a detrimental effect on
4  his present condition?
5     A. What do you mean by "present condition"?
6     Q. The condition he presents himself with
7  here today in 2018.
8     MR. MARUNA: Can you define what that is?
9  BY MR. FORMELLER:
10    Q. Sure. Let's start with the knee, the
11 right knee.
12    A. So if treatment was delayed, for example,
13 the physical therapy?
14    Q. Correct.
15    A. Would that have made him worse today than
16 he otherwise would have been?
17    Q. Yes, sir.
18    A. You know, in a general way, no, I don't
19 think it would have. You know, you can maybe argue
20 around the edges. I don't know that doing a little
21 more strengthening a little earlier might have
22 given him a little more strength, although
23 sometimes increased strength causes increased pain.
24       So it's complicated. You see there are

Page 35

1  multiple things that one is looking at. There's
2  pain. There's function. There are measurable
3  parameters like strength in motion, and they don't
4  always trend together.
5       In fact, I'm very leery of physical
6  therapy. In fact, I often don't prescribe physical
7  therapy at all for patients like this because
8  physical therapy is often used to increase strength
9  but often at the cost of increasing pain actually,
10 you know? So when you're talking about a person's
11 status, it has to be kind of, you know, defined
12 what parameter you're looking at.
13    Q. Would a physical examination currently of
14 Mr. Coleman add clarity to that opinion?
15    MR. MARUNA: Objection, foundation, calls for
16 speculation.
17    THE WITNESS: I actually kind of thought that I
18 didn't really offer an opinion so much as a
19 disclaimer as to why a model of the answer to the
20 question maybe couldn't be given, you know, because
21 I was saying you would have to define -- your
22 question concerns his current status and what I
23 attempted to say was that the -- what one is
24 looking at with status has to be defined.

Page 36

1  BY MR. FORMELLER:
2     Q. Because the medical records that we have
3  from the University of Illinois continue to state
4  that Mr. Coleman is experiencing right knee pain.
5     A. Okay. So if by status you mean pain, is
6  that --
7     Q. Yes.
8     A. Okay. So you're saying could a delay in
9  treatment, perhaps the physical therapy, have
10 resulted in him having increased pain currently?
11    Q. Yes.
12    MR. MARUNA: Objection, form of the question,
13 calls for speculation.
14    MR. FORMELLER: The doctor phrased the
15 question; I didn't.
16    MR. MARUNA: Doctor, you can answer over the
17 objections.
18    THE WITNESS: I'm trying to help you out.
19 Maybe I shouldn't do that.
20 BY MR. FORMELLER:
21    Q. No, that's quite all right.
22    A. You know, in general, no. I'm trying to
23 think of a circumstance in which physical therapy
24 being given on a delayed basis or not given at all

Page 37

1  would result in his knee hurting more today; and,
2  you know, in general it just wouldn't.
3     Q. The same inquiry or the same question as
4  it relates to his complaints about his hip.
5     A. Same answer, maybe more so.
6     Q. And then finally the last physical issue
7  is his lower back and issues that he presents and
8  complains about concerning his lower back.
9     A. I think it's unlikely that any of those
10 conditions would be made worse by delayed therapy.
11 For low back there are things that can be done more
12 so than for the hip and the knee like ultrasound
13 that can make you feel better for a little bit.
14    Q. So, Doctor, when you include in your
15 answers the words generally, I think I understand
16 what that means certainly in layman's terms, but
17 does that also give us the connotation that that
18 isn't always the case?
19    A. Actually, you know, we're kind of trying
20 not to be absolute, right? So I really can't give
21 an absolute answer that for every patient and any
22 circumstance it wouldn't apply, and I was trying to
23 sit here and think if there's a reasonable
24 scenario, so that's why I tried to use the word

312.345.1500
847.551.3460

Precise KRUSE

Page 38

1  "generally." It generally wouldn't matter. There
2  might be some patient somewhere where it would in
3  some particular circumstance.
4      Q. I may have asked you this, so I beg your
5  forgiveness. You've not actually seen or treated
6  Mr. Coleman, have you?
7      A. That is correct. Forgive me.
8      Q. Sure.
9      MR. MARUNA: Doctor is going to check on a
10 patient. We'll go off for a second.
11         (Short recess was taken.)
12     MR. FORMELLER: I have concluded my
13 examination.
14             EXAMINATION
15 BY MR. MARUNA:
16     Q. Just a few followup here real quick,
17 Doctor, and we'll get you out.
18         Counsel asked you some questions earlier
19 about some of the security procedures in the
20 prison. You're not familiar with security
21 procedures at Stateville Correctional Center,
22 correct?
23     A. No.
24     Q. You're okay with the timing of the

Page 39

1  treatment here from an orthopedic standpoint, is
2  that correct?
3      A. Yes.
4      Q. Your use of the word "purported" in
5  opinion No. 7, I just want to clarify your
6  testimony there. Is that because the report of the
7  fall was coming from a subjective portion of a
8  patient note, and that's why you put the word
9  "purported" in place?
10     A. So it's a juxtaposition, the use of the
11 word "fall," too. I just -- I mean, I have no
12 reason to doubt the patient but it wasn't clear to
13 me how much -- so a fall down the stairs meaning
14 head over heels versus it gives way a little, I
15 couldn't tell, with regard to what fall might
16 connote.
17     Q. Counsel asked you about the September 2016
18 physical therapy consult on Page 9 of your report,
19 if I could direct you to that.
20     A. Yes.
21     Q. Second sentence during this evaluation,
22 can you just read that for us?
23     A. Which paragraph?
24     Q. On September 28, 2016, plaintiff

Page 40

1  presented.
2      A. Second sentence?
3      Q. Yes, during this evaluation?
4      A. So I've read that sentence.
5      Q. Sure. You've already summarized it. What
6  did Mr. Coleman do on September 28th regarding
7  physical therapy?
8      A. He apparently -- it had, I guess, been
9  scheduled for him and he didn't want to do it, or
10 he refused the treatment.
11     Q. So therapy was offered and the patient
12 refused the physical therapy, correct?
13     A. Yes.
14     Q. I want to jump to your opinions real
15 quick, and we'll get you out of here.
16        Opinion 1, you're of the opinion that the
17 timing and nature of the treatment provided by
18 Dr. Obaisi of the plaintiff's degenerative right
19 knee condition was reasonable, compassionate, and
20 well within this community standard of care,
21 correct?
22     A. Yes.
23     Q. Opinion 2, I am of the opinion that the
24 timing and nature of the treatment provided by

Page 41

1  Dr. Obaisi to the plaintiff's right hip condition
2  was reasonable, compassionate, and well within the
3  community standard of care, correct?
4      A. Yes.
5      Q. Opinion 3, I am of the opinion that the
6  timing and nature of the treatment provided by
7  Dr. Obaisi of the plaintiff's degenerative lower
8  back condition was reasonable, compassionate, and
9  well within the community standard of care,
10 correct?
11     A. Yes.
12     Q. 4, I am of the opinion that the timing of
13 Dr. Obaisi's referrals for orthopedic surgical
14 evaluation for Mr. Coleman's right knee, right hip,
15 and lower back conditions was reasonable,
16 compassionate, and well within the community
17 standard of care, correct?
18     A. Yes.
19     Q. 5, I am of the opinion that it was not
20 clinically indicated for plaintiff to use crutches
21 after October 22, 2014, correct?
22     A. Yes.
23     Q. 6, I am of the opinion that Dr. Obaisi's
24 decision to discontinue Mr. Coleman's crutches on

Page 42

1  October 22, 2014, was reasonable and well within
2  the community standard of care, correct?
3  A. Yes.
4  Q. 7, I am of the opinion that not having
5  crutches was not the cause of Mr. Coleman's
6  purported November 2014 fall down the stairs,
7  correct?
8  A. Correct.
9  Q. All of those opinions, Doctor, are to a
10 reasonable degree of medical certainty, correct?
11 A. Yes.
12 Q. The basis is your review of the
13 aforementioned records in your report, pleadings,
14 as well as your education, experience, training,
15 and knowledge, correct?
16 A. Yes.
17 Q. And you hold those opinions as you sit
18 here today, correct?
19 A. Yes.
20 Q. Any of the additional information that
21 counsel talked to you about today regarding records
22 that -- or the treatment since the records that you
23 reviewed has not changed any of the opinions we
24 just discussed, correct?

Page 43

1  A. Correct.
2  Q. Nothing further. Thank you, Doctor.
3  MR. FORMELLER: Signature?
4  MR. MARUNA: Waive.
5  MS. REPORTER: Are you going to order the
6  transcript?
7  MR. FORMELLER: Let's hold on, see what the
8  judge does. Let's hold off on it.
9         FURTHER DEPONENT SAITH NOT

Page 44

1  STATE OF ILLINOIS )
                     ) SS:
2  COUNTY OF COOK   )
3      I, ANGELA M. INGHAM, a Notary Public
4  within and for the County of Cook, State of
5  Illinois, and a Certified Shorthand Reporter of
6  said state, do hereby certify that heretofore,
7  to-wit, on the 20th day of December, 2018,
8  CHADWICK C. PRODROMOS, M.D., personally appeared
9  before me at 1714 Milwaukee Avenue, in the City of
10 Glenview, in the County of Cook and State of
11 Illinois, a witness in a certain cause now pending
12 and undetermined in the United States District
13 Court, Northern District of Illinois, Eastern
14 Division, wherein Michael Coleman is the plaintiff
15 and Ghaliah Obaisi, Executor of the Estate of Saleh
16 Obaisi, M.D., is the defendant.
17     I further certify that the said witness
18 was first duly sworn to testify the truth, the
19 whole and nothing but the truth in the cause
20 aforesaid; that the testimony then given by said
21 witness was reported stenographically by me, in the
22 presence of said witness, and afterwards reduced to
23 typewriting by Computer-Aided Transcription, and
24 the foregoing is a true and correct transcript of

Page 45

1  the testimony so given by said witness as
2  aforesaid.
3      I further certify that the signature of
4  the witness to the foregoing deposition was waived
5  by agreement of counsel for the respective parties;
6  and that I am not counsel for nor in any way
7  related to any of the parties to this suit, nor am
8  I any way interested in the outcome thereof.
9      In witness whereof, I have hereunto set my
10 hand this 15th day of May, 2019.
11
12
       Notary Public, Cook County, Illinois
13     C.S.R. License No. 084-002984

### A
able 28:23
above-entitled 1:11
absence 17:17 33:21
absolute 37:20 37:21
absolutely 31:23
accurate 4:23 5:7
acronym 33:5
activities 22:6
actual 18:12
acute 22:15
Adams 2:8
add 35:14
addition 12:13 33:11
additional 6:3 42:20
addresses 14:24
administer 19:15
administration 24:19
advised 11:9
aforementioned 42:13
aforesaid 44:20 45:2
age 19:19
ago 5:2 7:17 9:17 16:10
agreement 45:5
alleviating 13:3
ambulatory 20:22
anesthesiologist 31:10
Angela 1:12 44:3
answer 21:11 25:1,7 35:19 36:16 37:5,21

answers 37:15
anti-inflamma... 33:8
apparently 26:4 40:8
appear 11:14
APPEARANC... 2:1
appeared 15:17 44:8
apply 37:22
appointment 23:21
appropriate 21:3
appropriately 15:14
argue 34:19
arthroscopy 30:19
asked 7:3 11:19 38:4,18 39:17
atrophy 33:13 33:17,21
attempted 35:23
attending 21:9
attentive 15:15
attorneys 12:11
August 25:10,13
Avenue 1:15 44:9
aware 9:3,10 10:5,11 14:10 14:13,19,21 28:24 29:11 30:9

### B
B 3:5
back 15:3 24:9 26:21 33:10 37:7,8,11 41:8 41:15
based 21:14

31:19
Basically 25:19
basing 32:20
basis 36:24 42:12
Bates 9:24
bearing 33:22
beg 38:4
began 9:14
begins 6:8
behalf 2:6,11 8:5 8:21,23
believe 10:7
better 28:1 33:1 37:13
bit 37:13
bottom 29:17
break 11:10
broad 31:19
broadly 25:3
brought 22:12

### C
C 1:10 4:2,9 44:8
C.S.R 45:13
called 4:3
callous 15:13,18
calls 35:15 36:13
capacity 20:23
care 13:14 14:6 15:16,22 16:8 21:3,9,12,13 40:20 41:3,9 41:17 42:2
cared 15:17
carried 29:17
cartilage 28:5
case 4:11 8:3 12:16 13:21,24 18:22 25:20 26:19 33:22 37:18
cases 7:9 8:13

19:5 26:12,14
CASSIDAY 2:8
caught 22:19
cause 1:11 17:18 42:5 44:11,19
causes 34:23
causing 13:22
Center 10:2,9 38:21
certain 44:11
certainly 5:4 16:11 25:4 33:3 37:16
certainty 14:20 42:10
Certified 1:14 44:5
certify 44:6,17 45:3
Chadwick 1:10 4:2,9 44:8
change 33:24
changed 42:23
check 38:9
Chicago 2:4,9 10:1
chronologic 17:2
chronology 14:19,21 16:13 16:22
circa 30:23
circumstance 36:23 37:22 38:3
circumstances 23:8
City 44:9
clarify 6:13 39:5
clarity 35:14
clear 8:23 18:1,2 20:1,6 30:22 39:12
client 4:12
clinic 30:24 32:4

clinically 41:20
close 5:1
Coleman 1:3 4:13 6:15 10:5 11:23 16:14,22 17:7 18:5,19 21:8,17,23 22:12 26:22,24 27:10 29:2,12 33:18 34:2 35:14 36:4 38:6 40:6 44:14
Coleman's 5:22 17:18 18:9 20:24 25:15 41:14,24 42:5
combines 15:4
come 8:16
coming 22:14 39:7
communicate 15:10
community 13:14 21:4 40:20 41:3,9 41:16 42:2
company 8:22
compassionate 13:13 15:9,16 15:19 40:19 41:2,8,16
complained 20:19
complaining 20:12 26:7
complains 37:8
complaint 15:12
complaints 15:18 18:4,7 19:13 20:9 37:4
complete 4:23
complicated

34:24
**complying** 32:16
**Computer-Ai...**
   44:23
**concerning** 5:22
   37:8
**concerns** 35:22
**concluded** 38:12
**conclusion** 32:21
**concur** 30:3
**condition** 5:23
   13:12 32:19
   34:4,5,6 40:19
   41:1,8
**conditions** 37:10
   41:15
**confuse** 29:19
**connotation**
   37:17
**connote** 39:16
**conscious** 14:10
**consideration**
   13:3
**consult** 39:18
**consultation**
   4:15 5:11,17
   5:22 6:11
   10:20,24 12:13
   14:10
**contact** 19:2
**continue** 36:3
**continued** 10:6
**contract** 9:9
**contribute** 33:14
**contributes**
   33:13
**convey** 15:13
**Cook** 1:13 44:2
   44:4,10 45:12
**copy** 5:11 6:24
**correct** 4:17 5:7
   9:6 15:6 17:19
   18:17,18,20,21
   24:7 30:11

32:10 34:14
38:7,22 39:2
40:12,21 41:3
41:10,17,21
42:2,7,8,10,15
42:18,24 43:1
44:24
**correctional** 9:6
   9:15 14:16
   22:13 38:21
**Corrections** 9:23
   15:23
**correctly** 13:15
**cost** 35:9
**counsel** 10:11
   13:20 24:3
   38:18 39:17
   42:21 45:5,6
**counselor** 25:3
   29:14
**County** 1:13
   44:2,4,10
   45:12
**couple** 5:2 7:15
**course** 29:21
   30:3 32:17
**court** 1:1 7:11
   7:13,15 44:13
**crutch** 17:13
   23:12
**crutches** 17:6,8
   17:13,17 23:12
   23:22 24:4
   33:11,12 41:20
   41:24 42:5
**current** 5:23
   30:23 35:22
**currently** 35:13
   36:10
**curriculum** 4:16
   4:21,22,24 5:5
**custom** 21:15

———— D ————

**D** 3:1
**daily** 22:6
**DANIEL** 2:2
**date** 5:24
**dated** 5:18
**day** 44:7 45:10
**days** 31:10
**deceased** 9:4
**December** 1:16
   9:18 44:7
**decision** 41:24
**decisions** 14:15
**deep** 22:8
**defendant** 1:8
   2:11 44:16
**defense** 8:17
**definable** 14:4,7
**define** 34:8
   35:21
**defined** 35:11,24
**definitively** 12:7
**degenerative**
   13:12 40:18
   41:7
**degree** 42:10
**delay** 14:3,4
   24:18,20 25:14
   36:8
**delayed** 13:22
   14:15 25:21
   26:4 34:12
   36:24 37:10
**delays** 34:2
**Department**
   9:23 15:23
**depend** 19:17
   25:17
**depends** 25:18
   31:19
**DEPONENT**
   43:9
**deposition** 1:10
   3:7 4:10 5:13
   6:16,23 7:11

7:19 8:6,11,20
8:23 9:13
10:18,22 45:4
**depositions** 6:14
**DESCRIPTION**
   3:6
**determine** 10:14
   12:2
**detrimental**
   24:13,20 25:15
   25:19 34:3
**dformeller@tr...**
   2:5
**died** 9:16
**differences**
   21:13
**different** 15:1
   20:5,10 21:13
   26:9 27:5
**differently** 21:8
**direct** 28:18
   39:19
**directly** 28:13
**director** 9:5
**disclaimer** 35:19
**discontinue**
   41:24
**discussed** 42:24
**discussion** 29:23
**distress** 22:15
**District** 1:1,1
   44:12,13
**Division** 1:2
   44:14
**doctor** 4:20 5:10
   5:17 6:8,13 7:8
   11:1,8,13
   12:18 14:17,24
   16:4 18:22
   19:12 22:10
   23:1,19 24:16
   25:1 26:22
   28:2,24 29:1
   29:18 30:16

31:11,12 32:12
33:10 34:1
36:14,16 37:14
38:9,17 42:9
43:2
**doctor's** 16:18
   28:13
**doctors** 11:24
   18:15
**doing** 34:20
**doubt** 39:12
**Dr** 4:10 9:4,14
   12:4 13:11
   28:2,3 29:1,12
   30:3,9 32:4
   40:18 41:1,7
   41:13,23
**Drive** 2:3
**drug** 33:8
**drugs** 31:22
**due** 25:2
**duly** 4:1,3 44:18
**duration** 26:6

———— E ————

**E** 3:1,5
**earlier** 10:19
   26:15 34:21
   38:18
**Eastern** 1:2
   44:13
**edges** 34:20
**education** 42:14
**effect** 24:13,20
   25:15 34:3
**efficacious** 32:23
**EGS** 26:16
**eight** 8:1
**either** 16:3 18:20
   19:11 26:6
   30:16 31:9
**employed** 9:8,9
**endure** 13:22
**engaged** 8:4,10

8:19
**engagement** 8:3
   12:16
**engagements**
   8:20
**epidurals** 31:21
**essentially** 9:22
**Estate** 1:7 44:15
**evaluate** 27:7
   28:21
**evaluation** 39:21
   40:3 41:14
**events** 14:11
**evidence** 33:17
**exactly** 8:8 21:12
   27:1
**exam** 19:4,17,18
   20:7,15
**examination** 3:2
   4:5 19:10,14
   19:21 35:13
   38:13,14
**examined** 4:4
**example** 25:9
   27:16,24 34:12
**Executor** 1:6
   44:15
**exhibit** 3:7 4:19
   4:20 5:10,14
   6:17 12:15
**exhibits** 6:21
**expeditious**
   32:12
**experience** 30:18
   42:14
**experienced**
   34:3
**experiencing**
   36:4
**expert** 7:9,13,20
   7:23 8:5,11,12
   8:14,19
**extent** 13:2
   19:18,18 26:6

27:3
**extremity** 19:11

─────── F ───────

**F** 2:7
**fabricated** 18:7
   18:9
**facility** 22:13
**fact** 9:12 35:5,6
**fall** 17:18,22
   18:1 22:21
   23:9 39:7,11
   39:13,15 42:6
**falling** 33:14
**familiar** 38:20
**feel** 37:13
**fell** 22:15 23:11
   23:23
**fever** 20:10
**fill** 32:3
**finally** 37:6
**firm** 12:11
**first** 4:3 5:4 6:7
   12:19 13:9
   14:23 15:1
   16:3 19:1,2
   44:18
**five** 6:9
**flavor** 20:15
**Floor** 2:4
**fluid** 27:22,22
**follow** 28:12
**followed** 9:24
**following** 5:23
   17:8
**follows** 4:4
**followup** 38:16
**foregoing** 44:24
   45:4
**Forgive** 20:1
   38:7
**forgiveness** 38:5
**form** 13:5 16:16
   24:23 36:12

**formal** 16:17
**FORMELLER**
   2:2 3:3 4:6
   5:16 6:19 7:1,5
   7:21,22 9:19
   11:6,12 13:8
   14:22 16:20
   22:23 23:3,5,7
   24:1 25:8
   29:10 30:1
   34:9 36:1,14
   36:20 38:12
   43:3,7
**former** 4:18
**foundation**
   14:17 22:17
   35:15
**four** 8:1 12:19
   14:23
**fourth** 15:3
**front** 5:9
**full** 4:7
**function** 35:2
**further** 5:21
   43:2,9 44:17
   45:3

─────── G ───────

**gait** 22:5
**gender** 19:19
**general** 13:6
   26:8 28:18
   32:22 34:18
   36:22 37:2
**generally** 21:21
   24:3 27:17
   31:7 37:15
   38:1,1
**Ghaliah** 1:6
   44:15
**give** 11:7 37:17
   37:20
**given** 8:11,19
   18:5 19:7

28:11 34:22
   35:20 36:24,24
   44:20 45:1
**gives** 39:14
**giving** 7:10
**Glenview** 1:15
   44:10
**gluteus** 28:4
**go** 11:9 12:1
   24:2,4,9 38:10
**goes** 28:7
**going** 4:19,21
   5:10 9:12 12:1
   16:16 23:1
   26:21 33:24
   38:9 43:5
**great** 20:9 27:11
**greater** 28:8
**guess** 40:8

─────── H ───────

**H** 3:5
**habitus** 19:20
**half** 9:15 25:14
**hand** 4:21 45:10
**hands** 20:22
**handwritten**
   16:19,21
**happened** 17:24
**hard** 29:19
**head** 39:14
**healthcare** 11:24
   18:15
**heels** 39:14
**help** 30:13 31:16
   31:17 33:4
   36:18
**heretofore** 44:6
**hereunto** 45:9
**hip** 15:2 28:5,10
   37:4,12 41:1
   41:14
**history** 18:5 19:4
   19:7,19

**hold** 42:17 43:7
   43:8
**holding** 24:5
**honestly** 10:12
**hour** 1:16
**hurting** 37:1
**hypothesize** 25:5
   25:20
**hypothetical**
   19:12 24:14,24
   25:4 26:21
**Hypothetically**
   24:16

─────── I ───────

**identification**
   5:15 6:18
**ignoring** 15:19
**Illinois** 1:1,13,15
   2:4,9 9:23 10:1
   10:8 32:5 36:3
   44:1,5,11,13
   45:12
**images** 18:12,16
**impact** 26:6
**important** 13:3
**improvement**
   32:18 33:3
**incarcerated**
   15:22 16:6
**include** 13:17
   18:11 37:14
**included** 4:16
**Including** 32:7
**incomplete**
   24:24
**increase** 26:10
   35:8
**increased** 34:23
   34:23 36:10
**increasing** 27:18
   27:18 35:9
**indicated** 41:20
**indicates** 5:19

**individual** 15:22
**individuals** 16:6
**information** 5:4
  42:20
**Ingham** 1:12
  44:3
**injections** 28:8
  31:9,21
**injury** 28:6
**inquiry** 37:3
**instances** 14:13
**institution** 9:6
  14:16 22:13
**instruction** 22:6
**intend** 6:20
**interchangeably**
  20:5
**interested** 45:8
**international**
  5:2
**involving** 4:12
**issue** 13:21 15:1
  17:3,5 33:11
  37:6
**issues** 37:7
**items** 6:9,10

**J**
**JAMES** 2:7
**jmaruna@cas...**
  2:10
**Joseph** 10:2
**judge** 43:8
**jump** 40:14
**juxtaposition**
  39:10

**K**
**KATHERINE**
  2:2
**keep** 13:6
**Khalid** 32:4
**kind** 16:10 22:9
  22:21 25:5
  26:11,17 32:6

32:22 35:11,17
  37:19
**knee** 13:12 15:2
  17:8,9 19:10
  19:13 20:13,19
  23:10 28:5,8
  28:10 30:19
  33:14 34:10,11
  36:4 37:1,12
  40:19 41:14
**know** 7:7 13:23
  20:11 21:11,14
  22:19,20 23:8
  23:12 25:17
  26:8 27:3,6,9
  27:16 29:3
  30:12,12 31:24
  32:24 33:20
  34:18,19,20
  35:10,11,20
  36:22 37:2,19
**knowledge** 28:15
  28:19 42:15

**L**
**language** 33:24
**layman's** 17:13
  37:16
**leaving** 26:21
**leery** 35:5
**let's** 6:15 13:9
  16:3,21 19:10
  34:10 43:7,8
**LETCHER** 2:2
**License** 45:13
**listed** 6:9 9:21
  9:22 10:17
  14:9 18:11
**litigation** 7:19
**little** 25:23 34:20
  34:21,22 37:13
  39:14
**living** 22:6
**LLP** 2:3,8

**long** 7:16
**look** 6:21 7:3
  12:18 23:6,14
  28:1 33:19
**looked** 6:3,23
  20:8
**looking** 4:22
  11:4 20:18
  28:2 30:15
  32:13 35:1,12
  35:24
**lot** 26:16 30:12
  30:13
**low** 37:11
**lower** 15:3 37:7
  37:8 41:7,15

**M**
**M** 1:12 44:3
**M.D** 1:7,11 4:2,9
  44:8,16
**Malik** 32:4
**management**
  29:2,9,13,22
  30:5,10,18,23
  31:2,8,20,21
**Marcus** 28:3,3
  29:1,12 30:9
**Marcus'** 30:3
**mark** 5:10 6:15
**marked** 4:19,20
  5:14 6:17
  12:14
**MARUNA** 2:7
  3:3 6:24 7:2,20
  9:18 11:4,8
  13:5 14:17
  16:16 22:17,22
  22:24 23:4,19
  24:23 29:6,24
  34:8 35:15
  36:12,16 38:9
  38:15 43:4
**massage** 22:9

27:21
**materials** 6:8
  12:15
**matter** 38:1
**Matthew** 28:2
  29:1
**mean** 7:10 14:7
  23:14 25:19
  31:20 34:5
  36:5 39:11
**meaning** 39:13
**means** 30:23
  37:16
**meant** 31:24
**measurable** 35:2
**measure** 20:21
**medical** 5:22
  8:21,22,24 9:5
  9:9,20,22,24
  10:1,2,6,8
  11:22 14:8,14
  15:21 16:8,23
  17:3,10 18:3
  18:10 20:24
  21:6,8,16,19
  22:13 29:4
  33:17 36:2
  42:10
**medications**
  31:8
**medicine** 30:23
  31:11
**medius** 28:4
**meeting** 5:2
**memory** 6:20
**meniscal** 20:4
  28:6
**meniscectomy**
  20:2
**meniscus** 19:23
**mentioned** 10:19
  26:14 31:4
  33:15
**met** 21:3

**Michael** 1:3 4:12
  6:14 44:14
**middle** 32:14
**Milwaukee** 1:15
  44:9
**mind** 8:16
**minor** 21:14,14
**minutes** 11:7
**mitigate** 26:17
  26:19
**mitigating** 31:5
**mitigation** 22:4
**modalities** 22:3
**model** 35:19
**modified** 27:14
**moment** 18:23
**month** 25:13,13
  25:14
**months** 5:2 9:17
**motion** 20:21
  22:2 27:18
  35:3
**MRI** 18:12 28:4
**multiple** 35:1
**muscle** 22:3
  26:16 27:20
  33:13,17

**N**
**N** 3:1
**name** 4:7
**names** 12:1
**narcotics** 31:22
**narrow** 13:7
**nature** 12:24
  13:11 15:5
  26:6 27:3
  40:17,24 41:6
**necessarily**
  25:22
**need** 24:17 33:4
**needed** 11:9
  14:2,2 33:12
**needs** 23:6

Chadwick Prodromos, M.D.
Michael Coleman v. Ghaliah Obaisi

**never** 16:5 18:19 31:23,23
**nonoperative** 29:2,21 30:4,4
**nonsteroidal** 33:8
**Northern** 1:1 44:13
**Nos** 6:17
**Notary** 1:12 44:3 45:12
**note** 28:7 30:7 39:8
**noted** 11:23
**notes** 16:19,21 16:24 28:2,14
**notice** 4:11
**November** 22:10 22:12 23:16,17 23:21 42:6
**NSAID** 33:5
**number** 3:7 11:24 25:11
**numbered** 6:6 11:15 17:16 22:11
**numerically** 14:7

**O**

**Obaisi** 1:6,7 9:4 9:14 12:4 13:11 40:18 41:1,7 44:15 44:16
**Obaisi's** 41:13 41:23
**object** 16:16
**objection** 13:5 14:17,18 22:17 22:18 24:23 35:15 36:12
**objections** 24:24 36:17

**obligation** 15:15
**observation** 20:18,22
**obstacle** 26:3
**obviously** 27:4
**October** 5:18,24 32:7 41:21 42:1
**offer** 17:4 32:3 33:3 35:18
**offered** 7:18 32:18 40:11
**okay** 5:12 10:5 32:6,11 36:5,8 38:24
**once** 7:14 8:9 9:2
**ones** 10:17
**opine** 18:8 28:23
**opinion** 13:10,10 13:18 17:4,5 17:16 18:6 19:6 21:1 22:11 24:7,18 32:21 34:1 35:14,18 39:5 40:16,16,23,23 41:5,5,12,19 41:23 42:4
**opinions** 11:2,14 11:16,20 12:18 12:20 14:24 15:5,9 34:1 40:14 42:9,17 42:23
**opposed** 20:4
**order** 43:5
**orientation** 17:1
**orthopedic** 18:24 19:6 26:24 27:12 39:1 41:13
**orthopedically** 25:10
**orthopedists**

26:23
**outcome** 45:8
**outside** 16:2,7

**P**

**p.m** 1:16
**page** 3:2,6 5:5 5:19,20 6:6,7 23:20 24:2 29:6,14,16,17 29:18,20 32:12 32:14 33:10 39:18
**pages** 11:1,4,13 11:17,20
**pain** 19:13 20:13 20:20 24:22 26:7,10,16,17 26:20 27:19 29:2,9,12,22 30:5,9,18,22 30:24 31:2,7,9 31:20,20 32:4 34:23 35:2,9 36:4,5,10
**painful** 26:11
**palpation** 20:20
**paragraph** 32:15 32:16 39:23
**paragraphs** 11:15 14:23
**parameter** 35:12
**parameters** 35:3
**part** 13:20 18:9
**particular** 19:21 38:3
**parties** 45:5,7
**party** 8:5
**passage** 29:4
**passed** 9:16
**pathology** 25:18
**patient** 11:10 13:22 18:24 19:3,8,11,12

19:17,23 20:8 20:8,12,16,19 21:22 24:16 25:15 27:19 28:10 32:24 37:21 38:2,10 39:8,12 40:11
**patient's** 13:4 24:21,22
**patients** 15:17 26:15 30:18 35:7
**pelvis** 28:10
**pending** 29:8 44:11
**people** 12:3,6 26:1,9 27:6 30:13
**perfectly** 23:5
**perform** 19:4
**periodically** 21:17
**persistent** 20:13
**person's** 35:10
**personally** 44:8
**phrased** 36:14
**physical** 12:8 14:14 15:1 19:4,14,22 21:18,21 22:1 24:10,11,17,19 25:10,12,21,24 26:2,9,10,23 27:4,10 28:11 28:16 31:1,11 32:17,23 33:2 34:13 35:5,6,8 35:13 36:9,23 37:6 39:18 40:7,12
**physicians** 21:9
**place** 17:23 23:9 25:12 39:9
**places** 33:5

**plaintiff** 1:4 2:6 4:12 8:13 39:24 41:20 44:14
**plaintiff's** 13:12 40:18 41:1,7
**pleadings** 42:13
**please** 4:8 29:16
**point** 10:14 14:1 17:12
**portion** 39:7
**position** 9:16 18:8
**possibly** 31:12
**post-arthrosco...** 19:23
**postsurgery** 20:13
**postsurgical** 30:17
**potential** 32:18 33:1,3
**potentially** 32:23
**practice** 14:5 18:23 21:15 30:16 31:18
**practitioners** 11:24 18:15
**pre-** 30:17
**preparation** 10:21
**prepare** 11:19 16:13,22 17:1
**prepared** 4:15 5:18 12:14,15
**preparing** 6:10 10:7,18 16:12
**prescribe** 27:12 27:13,13 35:6
**prescribed** 17:7 21:2,7,17 25:11 26:23 28:17,22

312.345.1500
847.551.3460

*Precise* KRUSE

Chadwick Prodromos, M.D.
Michael Coleman v. Ghaliah Obaisi

Page 6

| | | | | |
|---|---|---|---|---|
| **prescription** 28:11,20 | 39:4,9 42:6 **purpose** 17:1 21:21 26:18,18 27:9 | 21:18 22:16 23:14 27:1 32:20 33:16 | **relates** 37:4 **relation** 12:16 22:11 | 29:15,24 30:2 32:2 34:11 36:4,21 37:20 40:18 41:1,14 |
| **presence** 10:2 33:21 44:22 | | **receive** 10:6 | **relying** 18:14 | 41:14 |
| **present** 34:4,5 | **purposes** 9:13 24:11 | **recess** 11:11 38:11 | **remember** 7:16 16:10 29:4 | ——— **S** ——— |
| **presentation** 5:1 | **pursuant** 4:11 | **recollection** 6:22 | 30:14 | **S** 3:5 |
| **presented** 19:12 40:1 | **put** 28:21 39:8 | **recommended** 30:3 32:17 | **repair** 19:24 20:4 | **safer** 24:4 |
| **presenting** 21:22 21:23 | ——— **Q** ——— | **record** 11:8 18:2 22:18,22,24 | **report** 4:15,16 5:11,17,20 6:1 | **SAITH** 43:9 **Saleh** 1:7 44:15 |
| **presents** 24:17 34:6 37:7 | **question** 10:14 13:5 16:17 20:16 24:23 | 29:5 30:15 33:19 | 6:7,8,11 9:21 10:7,20,24 | **saying** 35:21 36:8 |
| **previously** 33:15 | 25:6 29:8,9,11 | **records** 6:4 9:21 9:23,24 10:2,3 | 11:13 12:13 14:9 16:12,18 | **says** 22:18 28:3 30:2 32:16 |
| **primary** 26:18 31:3 | 30:8 35:20,22 36:12,15 37:3 | 10:15,16 11:22 14:9,14 16:23 | 29:6 32:13 33:5,9,10 39:6 | **scenario** 37:24 **SCHADE** 2:8 |
| **prior** 8:3 25:18 | **questions** 24:10 38:18 | 17:4,10 18:4 18:10 21:1,6 | 39:18 42:13 | **scheduled** 40:9 **second** 7:16 15:2 |
| **prison** 15:24 16:2,3,5,7 38:20 | **quick** 38:16 40:15 | 21:17,19 32:9 33:17 36:2 | **reported** 18:16 44:21 | 38:10 39:21 40:2 |
| **probably** 27:1 | **quite** 36:21 | 42:13,21,22 | **Reporter** 1:14 43:5 44:5 | **security** 38:19 38:20 |
| **procedure** 19:1 | ——— **R** ——— | **recovery** 24:21 25:23 26:4 | **reports** 18:14 | **see** 6:21,24 10:3 12:22 24:5 |
| **procedures** 38:19,21 | **R** 2:2 | **reduced** 44:22 | **requested** 25:21 | 28:19 29:15 |
| **Prodromos** 1:10 4:2,9,10 5:13 | **rail** 24:5 | **referral** 29:22 30:5,14,24 | **respect** 25:2 **respective** 45:5 | 30:6 34:24 43:7 |
| 6:16 44:8 | **range** 20:21 22:2 27:18 | **referrals** 41:13 | **result** 37:1 | **seeing** 18:24 |
| **prolonged** 13:23 25:23 | **read** 13:9,14 30:7 33:23 | **referred** 24:3 29:1,12 30:9 | **resulted** 36:10 **retained** 9:16 | 19:22 28:22 33:16 |
| **prolonging** 24:21 | 39:22 40:4 | 30:18 31:1,8 32:4 | 12:11 13:20 | **seen** 10:15,16 11:23 16:6 |
| **protocol** 19:2,22 | **reading** 23:3 28:13 33:12 | **referring** 30:22 31:6,7 32:14 | **review** 10:20 11:22 18:3,10 18:11 20:24 | 25:9 32:8 38:5 |
| **provide** 16:7 21:13 22:1 27:20 31:16 | **real** 38:16 40:14 **really** 25:20 33:22 35:18 | **refresh** 6:22 **refused** 40:10,12 | 21:6,16 42:12 **reviewed** 6:1,8 | **sense** 18:6 **sent** 27:16 |
| **provided** 13:11 15:21 40:17,24 41:6 | 37:20 **reason** 39:12 | **regard** 39:15 **regarding** 40:6 42:21 | 6:10 10:19 42:23 | **sentence** 29:20 32:15 33:23 39:21 40:2,4 |
| **provider** 28:20 | **reasonable** 13:13 21:12 | **rehabilitation** 31:11 | **reviewing** 9:20 14:8 16:23 | **separate** 16:13 **September** |
| **providers** 15:12 15:15 21:13 28:21 | 37:23 40:19 41:2,8,15 42:1 42:10 | **rehabilitative** 24:11 | **right** 6:6 9:20 10:12 11:3 13:12 15:2,2 | 25:13 32:15 39:17,24 40:6 |
| **Public** 1:12 44:3 45:12 | **reasons** 14:21 25:12 | **related** 45:7 | 17:20 23:22 28:4,5,8,8 | **sequence** 14:11 |
| **purported** 17:21 | **recall** 17:9,14 | | | |

| | | | | |
|---|---|---|---|---|
| served 7:8 8:12 | stamps 9:24 | 25:4 31:12 | 39:15 | 23:20,23 26:3 |
| set 45:9 | standard 13:14 | sure 7:14 8:8,17 | ten 7:24 8:11 | 26:12 29:7 |
| sets 9:22 |   14:6 21:3 |   10:13 17:22,24 | tend 11:9 | 31:14 32:8 |
| seven 8:1 11:15 |   40:20 41:3,9 |   23:4 31:24 | tends 26:10 | 34:19 36:23 |
| short 11:10,11 |   41:17 42:2 |   34:10 38:8 | tenor 15:11 | 37:9,15,23 |
|   38:11 | standpoint 39:1 |   40:5 | tenure 9:14 | third 15:3 |
| Shorthand 1:14 | stands 33:8 | surgeon 18:24 | term 14:4 17:14 | thought 15:19 |
|   44:5 | start 24:14 34:10 |   19:7 | terms 14:11 |   21:12 35:17 |
| show 22:22 23:1 | state 1:13,14 4:7 | surgeons 26:24 |   37:16 | three 9:22 |
| shows 28:4 |   9:12 11:1 33:9 |   27:12 | test 6:20 | time 7:16 8:4 |
| signature 43:3 |   36:3 44:1,4,6 | surgery 16:9 | testified 4:4 32:8 |   10:7 17:7,12 |
|   45:3 |   44:10 |   17:8 19:23 | testify 44:18 |   19:1 22:16 |
| significant 26:3 | stated 11:16 | surgical 41:13 | testifying 7:9,10 |   23:13 |
| similarly 26:5 | statement 32:22 | sword 26:1,13 |   7:11 | times 7:15,18 |
| sir 4:7 34:17 | States 1:1 44:12 | sworn 4:1,4 | testimony 39:6 |   8:12,18 |
| sit 37:23 42:17 | Stateville 9:5,14 |   44:18 |   44:20 45:1 | timing 12:20,22 |
| situation 25:5 |   38:21 | symptom 31:5 | text 6:7 |   12:24 13:2,10 |
| skipping 32:11 | stating 22:14 | symptomology | thank 7:21 16:4 |   13:17 14:11 |
| small 28:4 | status 35:11,22 |   18:4 |   43:2 |   15:5 38:24 |
| somebody 27:17 |   35:24 36:5 | symptoms 13:4 | therapist 22:8 |   40:17,24 41:6 |
|   31:6,7 | stenographica... |   18:7 21:23 |   26:15 27:15,17 |   41:12 |
| someplace 23:16 |   44:21 |   22:4 25:16,17 |   27:20 | tissue 22:8 |
| somewhat 15:13 | stimulation 22:4 | system 9:15 | therapists 12:9 | to-wit 44:7 |
| sore 26:1 |   26:16 27:21 |   15:12 | therapy 14:15 | today 4:10 8:23 |
| sorry 7:1 22:23 | Street 2:8 | |   21:18,22 22:1 |   10:19,22 34:7 |
| sort 15:4 | strength 25:23 | T |   24:10,11,17,19 |   34:15 37:1 |
| South 2:3 |   27:18 34:22,23 | T 3:5 |   25:11,12,21,24 |   42:18,21 |
| specialist 31:9 |   35:3,8 | tailored 19:18 |   26:2,10,11,18 | told 10:12 28:9 |
| specific 27:8 | strengthening |   20:7 |   26:19,23 27:4 |   28:11 |
|   28:22 30:14 |   22:1 34:21 | take 19:4,5 29:3 |   27:10 28:11,16 | top 29:18,20,24 |
| specifically | stretching 22:2 | taken 1:11 4:11 |   31:2 32:17,23 |   30:2 |
|   10:21 17:2 | strike 24:14 |   6:15 11:11 |   33:2 34:13 | total 7:24 |
| specify 30:22 | subjective 39:7 |   17:14 38:11 |   35:6,7,8 36:9 | tough 25:6 |
| speculation | Substantial 19:9 | talk 19:10 23:20 |   36:23 37:10 | training 22:5 |
|   35:16 36:13 | suffering 13:23 | talked 42:21 |   39:18 40:7,11 |   42:14 |
| speed 23:19 | suit 45:7 | talking 13:20 |   40:12 | transcript 43:6 |
| spoken 12:2,4,5 | Suite 2:9 |   16:17,18 30:21 | thereof 45:8 |   44:24 |
|   12:5,8,10 | summarized |   35:10 | thing 22:9 31:3 | Transcription |
|   18:19 |   40:5 | tear 28:4 |   32:6 |   44:23 |
| SS 44:1 | summary 11:1 | techniques 22:7 | things 19:16 | treat 27:7 28:21 |
| St 10:2 |   11:14 23:3 | tell 4:22 7:24 8:8 |   30:13 31:4 | treated 38:5 |
| stairs 22:14 | summed 15:20 |   8:17 12:6 |   35:1 37:11 | treater 7:15,20 |
|   23:10 24:4 | support 24:5 |   14:20 20:14 | think 7:13 9:2 | treatment 5:23 |
|   39:13 42:6 | suppose 10:11 |   23:18 25:24 |   14:1,7 23:15 |   10:6 13:2,11 |

13:21 14:14
16:13,22 17:9
21:2,8 25:18
29:21 30:4,4
32:5 34:2,12
36:9 39:1
40:10,17,24
41:6 42:22
**trend** 35:4
**TRESSLER** 2:3
**tried** 30:13
37:24
**trochanter** 28:9
**true** 25:6 26:22
44:24
**truth** 44:18,19
**try** 26:17 31:12
31:14
**trying** 13:24
15:10 29:19
31:16 32:12
36:18,22 37:19
37:22
**twenty** 16:9
**twice** 8:9
**two** 6:14,21 11:1
11:7,17,20
**two-edged** 26:1
26:13
**types** 21:22 27:5
**typewriting**
44:23
**typical** 19:1,14
**typically** 30:23

**U**
**ultrasound** 22:3
26:17 27:21
37:12
**understand**
37:15
**understanding**
4:14 13:19
23:11 28:16

**undetermined**
44:12
**undue** 14:3,4
**United** 1:1 44:12
**University** 10:1
10:8 32:5 36:3
**unnecessary**
13:23
**unreasonable**
31:14
**up-to-date** 4:23
**use** 9:13 12:19
15:4 17:5,8,13
19:2 22:8
24:10 26:15
33:4 37:24
39:4,10 41:20
**useful** 26:12

**V**
**vague** 13:6
16:17
**value** 19:7
**variability** 21:24
27:11
**variable** 27:23
**versus** 7:4 39:14
**view** 19:5
**virtually** 31:23
**vitae** 4:16,21,22
4:24 5:5
**vs** 1:5

**W**
**Wacker** 2:3
**Waive** 43:4
**waived** 45:4
**walls** 16:7
**want** 6:13 13:6
20:14 22:22,24
39:5 40:9,14
**wanted** 20:6
25:20
**warranted** 24:18
**wasn't** 18:1

39:12
**way** 10:10 23:11
28:10 31:16
34:18 39:14
45:6,8
**ways** 21:14,14
**we'll** 38:10,17
40:15
**we're** 30:21
37:19
**we've** 12:14
**wear** 28:5
**West** 2:8
**Wexford** 8:21,22
8:24 9:9 10:11
**whereof** 45:9
**willing** 23:5
**wish** 15:13
**witness** 4:1,3 7:3
8:5,12 11:7
14:19 22:19
23:22 25:2
29:8 35:17
36:18 44:11,17
44:21,22 45:1
45:4,9
**word** 15:5,8
17:21 22:20
29:3 37:24
39:4,8,11
**worded** 25:3
**words** 12:19
37:15
**work** 5:21 27:17
**worries** 7:2
**worse** 26:2 34:15
37:10
**worsen** 33:13
**worst** 25:20
**wouldn't** 28:23
33:22 37:2,22
38:1
**written** 33:7

**X**
**X** 3:1,5
**X-ray** 18:12
**X-rays** 19:5 28:9

**Y**
**year** 28:12
**years** 16:10
**yesterday** 6:1

**Z**
**zero** 7:14

**0**
**084-002984**
45:13

**1**
**1** 3:8 4:19,20
13:9 40:16
**1:16-CV-4917**
1:5
**1:32** 1:16
**10** 29:18,20
**103** 20:11
**10th** 23:17
**12** 11:4,13 33:10
**13** 5:20 11:5,13
**15th** 45:10
**1714** 1:15 44:9
**19th** 5:18

**2**
**2** 3:8 5:10,14 6:6
40:23
**20** 1:16
**2012** 9:15
**2014** 17:18
22:10,12 23:17
41:21 42:1,6
**2015** 25:10
**2016** 28:3 32:15
39:17,24
**2017** 9:18 28:24
29:13

**2018** 1:16 5:19
8:9 32:7 34:7
44:7
**2019** 45:10
**20th** 44:7
**22** 41:21 42:1
**222** 2:8
**22nd** 2:4
**233** 2:3
**28** 32:15 39:24
**28th** 40:6
**2900** 2:9

**3**
**3** 3:9 6:17 41:5
**312.627.4000** 2:5
**312.739.3213**
2:10
**38** 3:3

**4**
**4** 3:3,8,9 6:17
28:3 41:12

**5**
**5** 3:8 41:19

**6**
**6** 3:9,9 23:20
24:2 41:23
**60606** 2:4,9

**7**
**7** 17:5,16 22:11
39:5 42:4

**8**

**9**
**9** 29:6,14,16,17
32:12 39:18